**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-01209-STV

ZAIN AGUILERA-VALDEZ,

     Plaintiff,

v.

TROY DAVENPORT,
NICK GRADISAR,
CITY OF PUEBLO,
STEVEN JESIKS,
NIKKI THOMAS,
OFFICERS DOE 1–4,
CHRIS FLORES,
FOUR UNKNOWN DETECTIVES,
KAREN WILSON,
MARIO DIAZ,
DETECTIVE RUIZ,
SHELLEY TAYLOR,
JEREMY BROWN,
G. BUSTOS,
JOHN CORDOVA,
CORDOVA TOWING LLC,
MOUNTAIN STATES LENDERS, LLC, and
RICHARD WOJCIK,

     Defendants.

_____

**ORDER**
_____

Entered By Magistrate Judge Scott T. Varholak

     This matter comes before the Court on the Motion to Dismiss Third Amended

Complaint brought by Defendants the City of Pueblo, Davenport, Gradisar; Thomas,

Jesik,[1] Flores, Taylor, Brown, Bustos,[2] Timme,[3] and Wojcik, (collectively referred to as the "City Defendants") [#78] (the "City Defendants' Motion") and on the Motion to Dismiss Plaintiff's Third Amended Complaint brought by Defendants Cordova, Cordova Towing LLC, and Mountain States Lenders, LLC (collectively referred to as the "Private Defendants") [#79] (the "Private Defendants' Motion") (collectively the "Motions").   The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment.   [## 54, 55, 80]   This Court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motions.   For the following reasons, the Court **GRANTS** the Motions, **DISMISSES WITHOUT PREJUDICE** the Amended Complaint, and **GRANTS LEAVE** for Plaintiff to file a Second Amended Complaint as stated in Section (IV), below.

I.      **BACKGROUND**[4]

A.      **July 18, 2020 Incident**

On July 18, 2020, Plaintiff drove into the parking lot of a Safeway grocery store in his 2008 Lexus.   [#72 at 7]   At approximately the same time, Plaintiff's uncle also pulled

---

[1] Identified by Plaintiff as "Sergeant Steven Jesiks"; correctly known as "Stephen Jesik." [#78 at 1]

[2] Identified by Plaintiff as "Officer G. Bustos"; correctly known as "Glenn Bustos."   [*Id.*]

[3] Identified by Plaintiff as "Cpl Timmy"; correctly known as "Chris Timme."   [*Id.* at 2] Defendants note that Corporal Chris D. Timme is not named as a Defendant by Plaintiff in the court caption, nor is it clear that notice has been served on Mr. Timme. Nonetheless, because he is referred to as a Defendant in the body of the Third Amended Complaint, the City Defendants file their motion on his behalf. [*Id.* at n.1]

[4] The facts are drawn from the allegations in Plaintiff's Third Amended Complaint (the "Complaint") [#72], which must be taken as true when considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).   *Wilson v.*

his car into the Safeway parking lot.  [*Id.*]  Plaintiff was in the parking lot for approximately two minutes, during which time he exited his car.  [*Id.* (Plaintiff noting that he later "jumped in [his] car")]  Plaintiff heard his uncle speaking loudly with a group of people but did not know what they were speaking about.  [*Id.*]  Plaintiff did not speak with or have any contact with the people his uncle was interacting with.  [*Id.*]  Gunfire broke out, and Plaintiff was struck in the leg.  [*Id.*]  Plaintiff reentered his car, then lost consciousness.  [*Id.*]

Plaintiff awoke in a hospital room in pain.  [*Id.*]  Plaintiff had suffered a broken leg, and was being treated with a narcotic painkiller, which left him "heavily intoxicated."  [*Id.*]  Inside Plaintiff's hospital room, Defendant Thomas questioned Plaintiff.  [*Id.*]  Later, Plaintiff could barely remember Defendant Thomas's questioning, because of his pain and medication.  [*Id.* at 8]

Defendant Thomas took possession of Plaintiff's shoes, jeans, and shorts, worth a total of approximately $350.  [*Id.* at 7]  Plaintiff's clothing has not been returned to him. [*Id.*]  Defendant Thomas also removed Plaintiff's shirt to photograph his tattoos, which were never exposed to the public.  [*Id.*]  Defendant Thomas conducted this search and seizure without informing Plaintiff of his *Miranda* rights and without a warrant.  [*Id.* at 25] Defendant Thomas did not activate her body-worn camera during this interaction.  [*Id.* at 8]  Plaintiff wanted to leave, but Defendant Thomas informed him that he was not free to leave.  [*Id.* at 7].  Defendant Thomas was on the phone and receiving orders from Defendant Flores.  [*Id.* at 8]  Defendant Thomas informed Plaintiff's family that he was being detained on suspicion of robbery.  [*Id.* at 8–9]

---

*Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

From the facts alleged in the Amended Complaint, it is unclear what occurred between Defendant Thomas telling Plaintiff in the hospital that he was not free to leave and Plaintiff arriving at the Pueblo Police Department. [*See id.* at 7–8]  Plaintiff alleges that his stepfather was trying to take him home, presumably from the hospital. [*Id.* at 7]  He also alleges that "at 3:10 am both my stepfather, my mother and myself were protesting the illegal detainment.  I had already pled the fifth.  I also went back and sat in the car." [*Id.*]  This protesting occurred outside the Pueblo Police Department. [*Id.* at 9]  It is not clear whether the car was Plaintiff's own or a family member's, but Plaintiff's allegations imply that he was going "back" into a car he had been in before, and it therefore seems likely that Plaintiff went to a private car of his own volition rather than being ordered into a police vehicle.  It is also unclear whether Plaintiff went to the police station voluntarily or pursuant to police orders, and whether his family members drove him or whether he got to the police station by some other means.

Plaintiff then alleges that "[a]t 3:19am I limped my way into the police station." [*Id.* at 10]  Inside the police station, Plaintiff sat unrestrained in the lobby. [*Id.* at 21; *see also id.* at 11, 15, 21 (photographs of Plaintiff unrestrained in the lobby)]  Defendant Jesik and an unknown officer, referred to as John Doe 1, escorted Plaintiff to an office where he was forced against his will to remove his shirt so that his tattoos could be photographed. [*Id.* at 12–13]  Plaintiff was also required to give his fingerprints, and the officers checked his hands for gunpowder residue. [*Id.*]  Plaintiff asked Defendants Thomas and Jesik what the basis of his detention was, but they did not provide a satisfactory answer. [*Id.* at 14]  On the basis of the photographs Defendants Thomas and Jesik took of the tattoos

usually concealed by Plaintiff's shirt, he was subsequently placed on the "Gang Data Base." [*Id.* at 9]

At 4:20 a.m., Plaintiff's stepfather asked Defendant Flores questions about Plaintiff's detention. [*Id.* at 15–21] Defendant Flores informed Plaintiff's stepfather that Plaintiff was "detained just for the mere fact that he was there, and incidents that led up to the shooting" and that "we know that there was some type of possibly a robbery, that that was occurring in that incident, so I don't know where, what his involvement, he is. I guess what we're trying to clarify it." [*Id.* at 16–17] Defendant Flores explained that Plaintiff would be brought to an interrogation room so that his invocation of the Fifth Amendment could be documented on the record. [*Id.* at 17, 19] Defendant Flores also stated that Plaintiff "may be involved in this [robbery] and that's what we're trying to determine." [*Id.* at 18] After being pressed by Plaintiff's stepfather to articulate the basis for Plaintiff's detention, Defendant Flores articulated that:

> [N]ow there's, other things that are coming about, that they think, that there was other things, that were led up to the actual shooting, so word that's what we're trying to figure out, and we know that he was involved. [H]e was part, number one his family member was one you said it is deceased, number two he was shot, so we know there was something that led up, to it so that's why we're trying to figure that out, and trying to get that information, so that's why we know he's part of it. So that's why we're trying to get that understanding, and I understand he doesn't want to talk so that's why we're going to get it on camera to show. So that way it clearly shows.

[*Id.* at 20–21]

Around 5:30 a.m., three detectives informed Plaintiff's family that he was being charged with double homicide.[5] [*Id.* at 21] Plaintiff was taken to an interrogation room

---

[5] Though not entirely clear from the Complaint, two people were apparently killed at the scene. [*Id.* at 24]

with Defendant Flores and four unknown detectives.  [*Id.* at 22]  Plaintiff was read his *Miranda* rights.  [*Id.*]  Plaintiff asserted his Fifth Amendment right to remain silent.  [*Id.*] The officers left the room, leaving Plaintiff there for approximately two hours.  [*Id.*]  Then, Detective Flores informed Plaintiff that he was free to go.  [*Id.*]  On Plaintiff's way out of the police station, the following exchange allegedly occurred:

> Next thing you know the old white detective comes up to [Plaintiff].  He tells [Plaintiff] ["]you know you're going to do 30 years for that double homicide. The only way you can get out of it is to come back and give us a statement. If you don't give us a statement we're gonna put that double homicide on you.  So you're gonna wanna talk to us.["]  [Plaintiff] replied to the detective "I'm good."

[*Id.*]  Plaintiff was detained for a total of approximately seven hours.  [*Id.* at 23-24]

After the night of July 18, 2020, Plaintiff experienced several other incidents which he understood to be retaliation against him for his refusal to make a statement that night. [*Id.* at 29-34]

### B.    November 1, 2020 Incident

The Pueblo Police Department maintains "information on individuals who are suspected of participating in a criminal street gang and groups that are suspected of being criminal street gangs" (the "Gang List").  [*Id.* at 48]  Following the July 18, 2020 incident, Plaintiff was designated as a participant in a criminal street gang on the Gang List.  [*Id.* at 7, 9, 25–26]  This designation was, at least in part, because of police documentation of his tattoos [*id.*; *see also id.* at 49] and, at least in part, because Plaintiff was "associating with someone, because of the type of clothing [he] wish[es] to wear, or because of hearsay statements from untested individuals."  [*Id.* at 50]

On November 1, 2020, an officer from the El Paso County Sherriff's Office pulled over Plaintiff for a traffic stop.  [*Id.* at 50].  Plaintiff was asked questions that he alleges had nothing to do with the traffic stop, like what he was doing in Colorado Springs, and whether he was consuming marijuana.  [*Id.* at 50–51]  The officer removed Plaintiff's passenger from the car and questioned her.  [*Id.* at 51]  Plaintiff alleges that the traffic stop was prolonged because his name appeared on the Gang List.  [*Id.*]

During the traffic stop, Plaintiff's stepfather arrived in the 2008 Lexus IS 250 that would later be seized by Pueblo police (*see* section C, below).  [*Id.* at 51–52]  Once Plaintiff's stepfather arrived and began to record the stop, the officer "quit profiling [Plaintiff] and quit trying to search [his] car."  [*Id.* at 51]  The officer ran the Lexus's plates but did not attempt to seize the car at that time.  [*Id.* at 52]

## C.    Car Seizure and Sale

On November 30, 2020, Plaintiff was pulled over for speeding by Defendant Brown.  [*Id.*]  After a search of police databases, Defendant Brown determined that Plaintiff's vehicle was subject to a Be-On-The-Lookout ("BOLO") bulletin directing that it be towed.  [#41-2 at 6:20–6:23, 15:08–15:20][6]  After Defendant Bustos arrived, Plaintiff and Defendant Brown had the following conversation:

---

[6] The Court considers the Body-Worn Camera footage attached as Exhibits to the City Defendants' first Motion to Dismiss (the "BWC Footage") without converting the Motions to motions for summary judgment.  At the motion to dismiss stage, a court may "consider documents attached to or referenced in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).  Here, the BWC Footage covers events also extensively quoted in Plaintiff's Amended Complaint (including conversations that Plaintiff would not otherwise have known about [*see*, *e.g.*, #72 at 31–32]), and Plaintiff

**[Defendant] Brown:** Another thing this vehicle was involved in a shooting back in July of this year.  I will have to take possession of it and I will have to tow it.

**[Plaintiff]:** Do you have a subpoena?

**[Defendant] Brown:** No I do not have a subpoena but it was involved in a shooting.  And it will be towed to the annex for a search warrant.

**[Plaintiff]:** [Y]ou're towing it right now for what reason?

**[Defendant] Brown:** [I]t was involved in a shooting OK, it's evidence.  I have your tow slip right here.  It's going to be taken down to the police station for a search warrant."

[#72 at 31–32]

The officers allowed Plaintiff and his passenger to take all of their personal items out of the vehicle.  [*Id.* at 32]  Plaintiff, however, feared that if he opened the trunk of his car to retrieve his personal property, the officers would have searched his trunk.  [*Id.*] Plaintiff therefore declined to retrieve his personal property from the car.  [*Id.*]  Defendants Bustos and Brown seized Plaintiff's car, a 2008 Lexus IS 250 (the "Vehicle").  [*Id.* at 27-29]  Inside the Vehicle and also seized by Defendants was a backpack containing Plaintiff's hair cutting tools, books, school laptop, necessities for barber school, a radar detector, and other personal items.  [*Id.* at 27]

Plaintiff alleges that officers Brown and Bustos knew that, because of the amount of time that had passed between the July 18 incident and their seizure of the Vehicle, the Vehicle was unlikely to contain evidence related to the shooting any longer.  [*Id.* at 32–33]  On his body-worn camera, Officer Brown can be heard saying "So this vehicle has

---

does not dispute their authenticity.  [*See generally* #86]  Plaintiff has also incorporated still images from the BWC into the body of his Complaint.  [#72 at 45]  The Court therefore considers the BWC Footage without converting the Motions.

some importants [*sic*], I'm sure whatever is in here is no longer in here because it's been five months." [*Id.* at 32] Plaintiff alleges that the seizure of the Vehicle was motivated by a desire to retaliate against him for his refusal to give a statement related to the July 18 incident, and "so the vehicle can later be sold and money can be put into city coffers." [*Id.* at 33]

The Vehicle was towed to Defendant Mountain State Lenders LLC, owned by Defendant Cordova. [*Id.* at 56] This facility functions as the impound lot for the Pueblo Police Department. [*Id.*; *see also* #87-1 at 2:15–2:28 (recording of a phone call between Plaintiff's stepfather and the Pueblo Police confirming that "the tow lots" serve as impound lots for the Pueblo Police Department)] The Vehicle was then towed from Defendant Mountain State Lenders LLC to Defendant Cordova Towing LLC on December 15, 2020. [#72 at 60]

At least two notices were sent to Plaintiff regarding the location of the Vehicle and his obligation to retrieve it. On December 17, 2022, Defendant Wojcik sent a "Notice to Owner of Towed/Impounded Vehicle" by certified mail to "the last known address according to the state of Colorado." [*Id.* at 39–40 (quoting Corporal Chris D. Timme), 59–60; *see also* #86-1 at 8–10] Included with Plaintiff's Amended Complaint is an image of an additional undated notice apparently sent by Defendant Cordova to Plaintiff. [*Id.* at 67] It is unclear when this notice by Defendant Cordova was sent, where it was sent to, whether it was sent by registered mail, or whether Plaintiff received it prior to the commencement of abandonment proceedings. [*See id.*] Both Notices informed Plaintiff that he must reclaim the Vehicle within 72 hours of the date of the notice, or abandonment proceedings would be instituted pursuant to C.R.S. §§ 42-4-1801 and 42-4-2101. [*Id.* at

60, 67]  Defendant Wojcik's notice states that "[u]nless this vehicle is claimed within 30 calendar days after the date of [*sic*] this notice was sent as determined from the postmark, it may be sold . . . ."  [*Id.* at 60]

Plaintiff alleges that he was unaware of what happened to his vehicle after it was towed on November 30, 2020.  [#72 at 38]  On an unidentified date before December 11, 2020, Plaintiff sent a letter to Defendants Davenport (the Pueblo Chief of Police), Gradisar (the Mayor of Pueblo), and the Pueblo City Attorney demanding the return of the Vehicle and his personal property.  [*Id.* at 35–36]  Despite these letters, which included current contact information for Plaintiff, the Notices were sent to an old address.  [*Id.* at 41, 74]  On an unidentified date after January 18, 2021, Plaintiff's stepfather called the Pueblo Police Department, and Defendant Timme explained the situation.  [*Id.* at 38–40]  Defendant Timme explained:

> [The car] looked like it was involved in something, where one of our patrol officers, wanted to draft up a search warrant because of whatever might have been inside the vehicle. So it was towed to the impound. . . . The vehicle was [then] sent back to Cordova towing. Where proper paperwork was filed sent to the last known address according to the state of Colorado. Saying that this vehicle is now at Cordova Towing ok. . . . So the state of Colorado last showed, that [Plaintiff's] physical address according to the paperwork I'm looking at was 907 E 5th and we go off of that.  Because that's what DMV updates when vehicles are reregistered every coming year.  So we never got the certified letters back from [Plaintiff].  After a period of time and when the vehicle is left at the tow yard.  Then the process is that within 30 to 60 days if that vehicle is not picked up it will then be sold to that tow company.  Which happened on the 18th of January.  So I'm not sure where [Plaintiff] was at that time and why, he didn't get the paperwork and the information that the vehicle was there, and never picked it up so.

[*Id.* at 38–40][7]  Plaintiff alleges that the seizure, declaration of abandonment, and sale of the Vehicle are a part of a coordinated effort between the Private Defendants and the Pueblo Police Department to seize private property to be resold.  [*Id.* at 42, 53–61]

### D.    Procedural History

On April 30, 2021, Plaintiff filed the instant action.  [#1]  On January 18, 2022, Plaintiff filed the operative Third Amended Complaint.  [#72]  The Third Amended Complaint asserts the following claims:

1.  Deprivation of rights under 42 U.S.C. § 1983 ("Section 1983") for violation of Plaintiff's right under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure, brought against Defendants Jesik, Thomas, Flores, Gradisar, Davenport, the City of Pueblo, Four Unknown Detectives, and John Does 1–2.  [*Id.* at 6–24]

2.  Deprivation of rights under Section 1983 for violation of Plaintiff's right under the Fourth Amendment to be secure in his person and effects against unreasonable search, brought against Defendants Jesik, Thomas, Flores, Gradisar, Davenport, the City of Pueblo, Four Unknown Detectives, and John Does 1–2.  [*Id.* at 24–27]

3.  Deprivation of rights under Section 1983 for violation of Plaintiff's right under the Fourth Amendment to be secure in his effects against unreasonable seizure, brought against Defendants Taylor, Brown, Bustos, Cordova, Wojcik, Corporal

---

[7] Apparently, on December 21, 2020, Defendant Timme completed paperwork indicating that the vehicle was abandoned, appraised it, and determined its fair market value selling price to be between $465.00 and $581.25.  [#86-1 at 13–17]  On January 18, 2021, the vehicle was sold to Defendant Cordova Towing, LLC for $581.00.  [*Id.* at 2]  These specific details, however, are not alleged in the Complaint.  Ultimately, the specific details do not impact the Court's analysis.

Chris D. Timme,[8] Mountain State Lenders, LLC, and Cordova Towing, LLC.  [*Id.* at 27–42]

4.  Deprivation of rights under Section 1983 for retaliation against Plaintiff for his speech and expressive conduct, in violation of Plaintiff's rights under the First Amendment to the United States Constitution, brought against all Defendants.  [*Id.* at 43–45]

5.  Deprivation of rights under Section 1983 for violation of Plaintiff's right under the Fourteenth Amendment to the United States Constitution not to be deprived of life, liberty, or property without due process of law, brought against Defendants Davenport and Gradisar.  [*Id.* at 45–52]

6.  Deprivation of rights under the Enhance Law Enforcement Integrity Act ("ELEIA"), Colo. Rev. Stat. § 13-21-131, for violation of rights secured by Article II of the Colorado Constitution (the "Colorado Bill of Rights"), brought against all defendants.  [*Id.* at 52–53]

7.  Injury to property by reason of a violation of Section 1962 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, brought against all Defendants except the City of Pueblo.  [*Id.* at 53–78]

8.  Deprivation of rights under Section 1983 for violation of Plaintiff's right under the Fourteenth Amendment not to be deprived of substantive due process, brought against Defendants Davenport and Gradisar.  [*Id.* at 78]

---

[8] As explained above, Corporal Chris D. Timme, identified by Plaintiff as "Cpl Timmy," is not named as a Defendant in the case caption, and it is not clear that notice has been served on Mr. Timme.

The City Defendants' Motion was filed on January 31, 2022, seeking dismissal of all claims against the City Defendants.  [#78]  Plaintiff has Responded [#86], and the City Defendants filed a Reply [#95].  The Private Defendants' Motion was filed on February 1, 2022, seeking dismissal of all claims against the Private Defendants.  [#79]  Plaintiff has Responded [#87], and the Private Defendants filed a Reply [#96].

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The Court's ultimate duty is

to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id.* at 1110 n.3. The Court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Moreover, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quotation omitted).

## III.   ANALYSIS

As an initial matter, the Court notes that the Amended Complaint arguably fails to comply with the requirement in Federal Rule of Civil Procedure 8(a)(2) that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1) further specifies that "[e]ach allegation must be simple, concise, and direct." A complaint "must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and what specific legal right [he or she] believes the defendant violated." *Kolak v. Arapahoe Cnty.*, No. 22-1139, 2022 WL 3582222, at *2 (10th Cir. Aug. 22, 2022) (quotation omitted).

The purpose of Rule 8 is "to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant

has a legal right to relief." *Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Assn. of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989).  "And while [the Court] remain[s] cognizant that pro se litigants may be hard pressed to conform to Rule 8(a)'s requirement of brevity while attempting to provide the defendant fair notice, their pro se status does not relieve [them] of [their] obligation to comply with procedural rules," *Kolak*, 2022 WL 3582222, at *2 (citations and quotations omitted).

The Court finds that Plaintiff did minimally satisfy Rule 8's requirements with regards to several of his claims, as evidenced by the fact that Defendants could and did respond with particularity to many of the claims brought against them.  [*See generally* ##78, 79]  At times, however, Plaintiff improperly "combines numerous factual allegations and multiple legal theories into his individual claims for relief and apparently expects the court and Defendants to determine which specific factual allegations are being asserted in support of which specific legal claims."[9]  *Escobar v. Jones*, No. 1:09-CV-2207-BNB, 2009 WL 3052715, at *1 (D. Colo. Sept. 22, 2009).  The Court finds it inappropriate to dismiss Plaintiff's entire Complaint for failure to comply with Rule 8 but advises Plaintiff to ensure that his future filings in this matter are clear and concise.[10]

---

[9] For example, in Response to the City Defendants' argument that Claim Six fails to allege any factual support for state constitutional violations, Plaintiff states: "My complaint it's [*sic*] full of facts that show both State and federal violations to my constitution[.]  It's all in the claim.  If the defense cannot understand this, they must not know how to read the King's English."  [#86 at 22-23]  In addition to straining the bounds of decorum acceptable in a legal filing, this is the very definition of expecting the Court and Defendants to determine which specific factual allegations are being asserted in support of which specific legal claims.

[10] As detailed herein, the Court is providing Plaintiff an opportunity to file an Amended Complaint to attempt to cure the deficiencies identified by this Order.  Should Plaintiff choose to file an Amended Complaint, he should bear in mind that any Answer submitted

The Court first discusses the declaration of abandonment and sale of the Vehicle, then addresses each claim in turn.

## A.      Declaration of Abandonment and Sale of Vehicle

Integral to several of Plaintiff's claims is the issue of whether his Vehicle was declared abandoned and subsequently sold legally.  [*See*, *e.g.*, #72 at 33, 38, 41, 54, 62–67, 74]  Rather than address this issue in a piecemeal fashion across several Claims for relief, the Court addresses it first.

Under Colorado law, the definition of "abandoned motor vehicle" includes: "Any motor vehicle stored in an impound lot at the request of a law enforcement agency and not removed from the impound lot within seventy-two hours after the time the law enforcement agency notifies the owner or agent that the vehicle is available for release upon payment of any applicable charges or fees[.]"  Colo. Rev. Stat. § 42-4-1802(1)(c).  Within ten days of having an abandoned motor vehicle towed, the law enforcement agency authorizing the tow is required to make a report to the Colorado Department of Revenue.   Colo. Rev. Stat. § 42-4-1804(1)(b); *see also id.* at §§ 42-4-1801(9), 42-1-102(24).

The Department of Revenue is then required to search its records to determine the last-known owner of record of the vehicle, and report back to the law enforcement agency that authorized the tow with all relevant information about the owner and any lienholder.  Colo. Rev. Stat. § 42-4-1804(2).  For purposes of Title 42, "Last-known address" means:

---

by Defendants must either admit or deny the allegations in the Amended Complaint. Thus, any Amended Complaint should contain short, plain statements of fact that Defendants can either admit or deny.

"For notifications regarding motor vehicles, the most recent mailing address provided on a vehicle registration or vehicle registration mailing address change notification provided in accordance with section 42-3-113[11] or the corrected address as reported by an address correction service licensed by the United States postal service[.]"   Colo. Rev. Stat. § 42-1-102(47.3)

Upon receipt of the Department of Revenue's report by the law enforcement agency:

> (b) If the responsible law enforcement agency uses an operator to store the motor vehicle, the responsible law enforcement agency, within ten working days after the receipt of the report from the department required in subsection (2) of this section, shall notify by first-class mail the owner of record, if ascertained, and any lienholder, if ascertained, of the fact of the report and the claim of any lien under section 42-4-1806.  The notice shall contain information that the identified motor vehicle has been reported abandoned to the department, the location of the motor vehicle and the location from where it was towed, and that, unless claimed within thirty calendar days after the date the notice was sent as determined from the postmark on the notice, the motor vehicle is subject to sale.
>
> (c) The responsible law enforcement agency shall include in the notices sent pursuant to either paragraph (a) or (b) of this subsection (4) a statement informing the owner of record of the opportunity to request a hearing concerning the legality of the towing of the abandoned motor vehicle, and the responsible law enforcement agency to contact for that purpose.

Colo. Rev. Stat. § 42-4-1804(4)(b)–(c).  Finally, "[a]bandoned motor vehicles or motor vehicles abandoned in an impound lot subsequent to a tow from public property shall be appraised by a law enforcement officer or an independent motor vehicle dealer and sold by the responsible law enforcement agency . . . not less than thirty days nor more than

---

[11] Colo. Rev. Stat. § 42-3-113(7) requires that "[w]ithin thirty days after moving from an address listed upon a vehicle registration, a person shall notify the county of residence in which the vehicle is to be registered."

sixty days after the date the notice required by section 42-4-1804(4) was mailed."  Colo. Rev. Stat. § 42-4-1805(1)(a).

Plaintiff does not allege, and the Court identifies no facts that would suggest, that the Vehicle was not sold pursuant to the procedural requirements outlined above.  [*See generally* #72]   Plaintiff impugns the motives of various actors [*see*, *e.g.*, #72 at 38 ("[Defendant] Cordova use[d] the protocol for an abandoned car so that he could help defendants retaliate against me."), 74 (accusing the Pueblo Police Department of "[u]nconstitutional policing for profit")], but these are conclusory allegations unsupported by facts, and the Court need not defer to them.   Plaintiff also alleges that the City Defendants should have deviated from the process established by statute.  [*Id.* at 35–37 (suggesting that the City Defendants should have sent notice by means identified in his letters to various city officials, rather than to "the last-known owner of record" as required by Colo. Rev. Stat. § 42-4-1804 at the "last-known address" for notification purposes, as required by Colo. Rev. Stat. § 42-1-102(47.3).)]  But Plaintiff fails to offer any justification for creating exceptions to the statutorily mandated requirements outlined above.

The Court therefore finds that Plaintiff has failed to allege any facts that would support an inference that the Vehicle was not declared abandoned and then sold in compliance with Colorado law.  Therefore, to the extent that any of Plaintiff's Claims for relief rely on the assertion that the Vehicle was improperly declared abandoned and sold, the Court finds that those Claims fail, as described below.

**B.    Unlawful Seizure of Person / False Arrest**

Claim One seeks relief under Section 1983 for alleged violations of Plaintiff's right under the Fourth Amendment to be secure in his person against unreasonable seizure.

18

[#72 at 6–24]  This claim is premised upon Plaintiff's arrest on suspicion of robbery.  [*Id.*]

Plaintiff brings this Claim against Defendants Jesik, Thomas, Flores, Gradisar,

Davenport, Officers Doe 1–2, Four Unknown Detectives, and the City of Pueblo.  [*Id.* at

6]  The City Defendants argue that Claim One should be dismissed because there was

both reasonable suspicion and probable cause for Plaintiff's detention, based on the

reasonable belief that he had been involved in a robbery that led up to the shooting.  [#78

at 7–8]  The City Defendants also argue that the individual City Defendants are entitled

to qualified immunity [*id.* at 19–21], and that Plaintiff has failed to properly allege municipal

liability against the City of Pueblo [*id.* at 28–31].  The Court agrees that Plaintiff has failed

to plausibly allege a constitutional violation related to his arrest on robbery charges.

"Section 1983 provides a cause of action for 'the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws' by any person acting

under color of state law."  *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004)

(quoting 42 U.S.C. § 1983).  Courts "use[ ] the common law of torts as a 'starting point'

for determining the contours of claims of constitutional violations under § 1983."  *Id.* at

1286.  However, "[a]lthough the common law tort serves as an important guidepost for

defining the constitutional cause of action, the ultimate question is always whether the

plaintiff has alleged a constitutional violation."  *Id.* at 1289.

Colorado common law prescribes only three elements for a claim of false arrest:

"(1) The defendant intended to restrict the plaintiff's freedom of movement; (2) The

defendant, directly or indirectly, restricted the plaintiff's freedom of movement for a period

of time, no matter how short; and (3) The plaintiff was aware that [his] freedom of

movement was restricted."  Colo. Jury Instr.-Civ. ("CJI-Civ.") § 21:1 (2022).  Even if these

19

three elements are met, Defendants can defeat a false arrest claim if there was probable cause for the arrest.[12]

"A warrantless arrest is [constitutionally] permissible when an officer has probable cause to believe that the arrestee committed a crime."  *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1256 (10th Cir. 1998).   "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person

---

[12] Under Colorado common law, lack of probable cause is not an element of the false arrest claim but instead is considered in connection with the affirmative defense of privilege.  *See Carani v. Meisner*, No. 08-cv-02626-MSK-CBS, 2010 WL 3023805, at *5 (citing CJI-Civ. § 21:11 ("Privilege of Peace Officer to Arrest without a Warrant")).  The Court acknowledges, however, that the common law serves only as "a guidepost for defining the constitutional cause of action," *Pierce*, 359 F.3d at 1289, and the Tenth Circuit has often defined a claim for false arrest under Section 1983 simply as an arrest made without probable cause.  *See, e.g.*, *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) ("In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime"); *Cottrell v. Kaysville City*, 994 F.2d 730, 733 (10th Cir. 1993) ("A plaintiff may recover damages under § 1983 for wrongful arrest if she shows she was arrested without probable cause.").  Although this would indicate that lack of probable cause is an element of the claim that must be alleged and proven by the plaintiff, in other decisions, the Tenth Circuit has indicated that the defendant has the burden of proving probable cause for the arrest.  *See Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985) ("The burden of going forward with evidence establishing the existence of probable cause is on the defendant in a 1983 action."); *Martin v. Duffie*, 463 F.2d 464, 468 (10th Cir. 1972) (holding that defenses of good faith and privilege available at common law are available in Section 1983 cases, but "must be put forward by the officers as defenses").  For purposes of deciding the City Defendants' Motion, however, the Court need not resolve whether probable cause is an essential element of the claim on which Plaintiff bears the burden of proof or whether it is an affirmative defense on which the City Defendants bear the burden of proof.  Even if construed as an affirmative defense, the City Defendants have argued that probable cause existed.  [#78 at 7]

to be arrested."[13]  *United States v. Alonso*, 790 F.2d 1489, 1496 (10th Cir. 1986).  The determination of probable cause is based upon "the totality of the circumstances," *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007), and "the reasonable conclusions that could have been drawn based on the facts known to the officer at the time of the arrest," *Spalsbury v. Sisson*, 250 F. App'x 238, 245 (10th Cir. 2007).   "Neither the officer's subjective beliefs nor information gleaned post-hoc bear on [the probable cause] inquiry." *A.M. v. Holmes*, 830 F.3d 1123, 1139 (10th Cir. 2016) (quotation omitted).

Plaintiff was detained on suspicion of robbery.  [#72 at 8]  The elements of the crime of robbery under Colorado law are: "'(1) that the defendant (2) in the State of Colorado (3) knowingly (4) took anything of value (5) from the person or presence of [a] victim (6) by the use of force, threats, or intimidation.'"  *Anderson-Bey v. Zavaras*, 641 F.3d 445, 451 (10th Cir. 2011) (quoting *People v. Borghesi*, 66 P.3d 93, 97 (Colo. 2003)). Plaintiff does not appear to dispute that the police had probable cause to believe a robbery occurred [*see* #72 at 7  (referring to "the people my uncle was arguing with, or allegedly tried to rob")], only that the police had probable cause to believe Plaintiff was involved [*see id.* at 20 ("At the time of my detainment no officers could provide me with any facts

---

[13] Where, as here, an officer has asserted the defense of qualified immunity, "a section 1983 plaintiff [must] show that it would have been clear to a reasonable officer that probable cause was lacking under the circumstances."  *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) (internal quotation omitted).  The Tenth Circuit has "implement[ed] this standard by asking whether there was 'arguable probable cause' for an arrest."  *Id.* Because the Court finds that probable cause existed for the arrest, the Complaint likewise fails the lesser standard of arguable probable cause.  As a result, under either prong of the qualified immunity analysis, the individual Defendants are entitled to qualified immunity on the claims brought against them in their individual capacities.

related to reasonable suspicion or probable cause of *me* committing a robbery." (emphasis added))].

Plaintiff alleges that the following facts were known to the police:

[N]ow there's, other things that are coming about, that they think, that there was other things, that were led up to the actual shooting, so word that's what we're trying to figure out, and we know that he was involved. [H]e was part, number one his family member was one you said it is deceased, number two he was shot, so we know there was something that led up, to it so that's why we're trying to figure that out, and trying to get that information, so that's why we know he's part of it.

[#72 at 20 (quoting Defendant Flores)]. In summary, the police knew that: (1) an incident, likely a robbery, led to the shooting [*id.* at 17]; (2) Plaintiff "was involved" in the events that led up to the shooting [*id.* at 20]; (3) Plaintiff was at the site with his family member[14] [*id.*]; and (4) Plaintiff and his family member were both shot [*id.*], suggesting that Plaintiff had been involved in the incident.[15] Given the totality of these facts and circumstances within the knowledge of the police, the Court finds that Plaintiff has failed to plead facts showing that a person of reasonable caution would not have had the belief that Plaintiff had assisted in committing the offense.

Because the Court finds that Plaintiff has failed to allege a constitutional violation, it does not analyze whether any such violation would have been clearly established or

---

[14] Plaintiff alleges that he and his "uncle pulled up [to the Safeway] at the same time." It is unclear from the Amended Complaint when the police became aware of this fact.

[15] Additionally, if Defendant Thomas photographed Plaintiff's tattoos before his arrest [*id.* at 7], the police may also have known that Plaintiff had tattoos which could result in him being added to a gang database, an additional factor that could support an investigative detention. *See United States v. Aragones*, 483 F. App'x 415, 417 (10th Cir. 2012) (listing a gang tattoo as one factor among several giving rise to a reasonable suspicion sufficient to support an investigative detention); *United States v. Jeter*, 175 F. App'x 261, 265 (10th Cir. 2006) (same).

whether it would have been attributable to supervisors or to the municipality.  *See A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016) (courts have discretion to address either prong of the qualified immunity test first); *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution."); *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1155–56 (10th Cir. 2001) ("[T]he City cannot be held liable where, as here, the officers did not commit a constitutional violation." (citation omitted)).  Accordingly, the City Defendants' Motion is GRANTED to the extent that it seeks dismissal of Claim One. Claim One is DISMISSED WITHOUT PREJUDICE, and Plaintiff is GRANTED LEAVE to file an Amended Complaint as stated in Section (IV), below.

### C.    Unlawful Search

Claim Two seeks relief under Section 1983 for alleged violations of Plaintiff's right under the Fourth Amendment to be secure in his person and effects against unreasonable searches.  [#72 at 24–27]  Plaintiff alleges that he was subject to two unconstitutional searches: first in the hospital when Defendant Thomas photographed his tattoos, questioned him, and searched the pockets of his jeans [*id.* at 25], and second at the police station when Defendants Jesik and Officer Doe 1 photographed his tattoos, fingerprinted him, and checked his hands for gunpowder residue [*id.* at 26].  Plaintiff brings this Claim against Defendants Jesik, Thomas, Flores, Gradisar, Davenport, Four Unknown Detectives, Officers Doe 1–2, and the City of Pueblo.  [*Id.* at 24]

None of the searches were conducted pursuant to a search warrant.  [*Id.* at 7, 25] And the Supreme Court has made clear that "searches conducted outside the judicial

process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  With this principle in mind, the Court analyzes each search in turn.

### 1.    Searches at the Hospital

While Plaintiff was in the hospital, Defendant Thomas removed Plaintiff's shirt to take photographs of his tattoos, which were never exposed to the public, without a warrant or Plaintiff's consent.  [*Id.* at 7]  Defendant Thomas searched the pockets of Plaintiff's jeans, which he was not wearing at the time.[16]  [*Id.* at 25]  The City Defendants argue that photographing Plaintiff was permissible because courts have found hospital patients in similar situations not to be in police custody, and that the  search of Plaintiff's jeans was permitted under the plain view exception to the warrant rule.  [#78 at 9]

### a.    Removal of Shirt and Photographing

It is not clear which well-delineated exception to the Fourth Amendment's warrant requirement might have authorized Defendant Thomas's removal of Plaintiff's shirt and photographing of his tattoos.   The City Defendants have not identified any applicable

---

[16] Plaintiff also alleges that Defendant Thomas asked Plaintiff questions, which Plaintiff characterizes as an "interrogation," without informing him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  [#72 at 7] To the extent to which Plaintiff might seek recovery under Section 1983 for violation of his rights under *Miranda*, the Court notes that the Supreme Court has recently held in the Fifth Amendment context that "a violation of *Miranda* is not itself a violation of the [constitution]" and therefore does not "confer a right to sue under § 1983."  *Vega v. Tekoh*, 142 S. Ct. 2095, 2108 (2022)

exception.[17]  [*See* ##78 at 9, 95 at 4–5]  The only case cited by the City Defendants is *United States v. Jamison*, where the Fourth Circuit held that the police could permissibly photograph a gunshot victim's wound "perhaps to identify the caliber of weapon the assailant used on the victim and the trajectory of the bullet."  509 F.3d 623, 631–32 (4th Cir. 2007).  But the facts of that case are materially different from the present matter, where police photographed not Plaintiff's leg wound, but rather his chest tattoos.  As noted previously, searches conducted without a warrant are "per se unreasonable" unless a specifically established and well-delineated exception applies.  *Gant*, 556 U.S. at 338.

The analysis does not end there, however, because the City Defendants have asserted qualified immunity on behalf of the individually named Defendants.  [#78 at 19–21]  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted).  Once the defense of qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'"  *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

---

[17] One possible exception is that this was a search incident to arrest, but Defendants do not raise that argument and it is unclear from the Complaint whether or not Plaintiff was under arrest during the time he was at the hospital.  [*Compare* #72 at 25 (describing Plaintiff as being "arrested" and criticizing Defendant Thomas for not providing Plaintiff with his *Miranda* rights), *with id.* at 7–8 (facts tending to suggest that Plaintiff transported himself to the police station)]  As described below, however, this lack of clarity from the Complaint contributes to the Court's conclusion that the individually-named Defendants are entitled to qualified immunity on Claim Two as it is currently pled.

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent" such that it is "settled law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).   The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity."  *Id.* at 591 n.8.  The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'"  *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Tenth Circuit has explained the "clearly established" prong of the qualified immunity analysis as follows:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate.   The dispositive question is whether the violative nature of the particular conduct is clearly established. . . .  Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted). The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted).   "[T]he 'specificity' of the rule is especially important in the Fourth Amendment context."  *Id.* (quotation omitted).

Plaintiff cites to no case by the Supreme Court or the Tenth Circuit that would clearly establish that it was a violation of the Fourth Amendment for the police to remove his shirt to photograph his tattoos, particularly where it is unclear from the Complaint whether Plaintiff was under arrest at the time of the intrusion.  Nor has the Court identified any such case.[18]  Neither has the Court determined that the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains.[19]  Plaintiff

---

[18] As another court in this district has recognized:

> The Court is mindful that the Tenth Circuit's admonition that a plaintiff bears the burden of citing to the Court clearly established law, *see Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010), typically involves plaintiffs who are represented by counsel.  *See, e.g.*, *Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016); *Rojas v. Anderson*, 727 F.3d 1000, 1005-06 (10th Cir. 2013); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013).  However, the Tenth Circuit has reversed a trial court's dismissal of a pro se plaintiff's excessive force claim—where the trial court found the plaintiff had failed to identify a case demonstrating his right was clearly established—by itself pointing to a Supreme Court case sufficiently similar to the facts alleged and finding the plaintiff's right was clearly established.  *See Ali v. Duboise*, 763 F. App'x 645, 651–52 (10th Cir. 2019).

*Brandt v. Crone*, No. 19-CV-03103-MEH, 2021 WL 681441, at *5 (D. Colo. Feb. 22, 2021), *aff'd*, No. 21-1093, 2022 WL 898761 (10th Cir. Mar. 28, 2022).  "Therefore, the Court has conducted an additional inquiry to determine whether the relevant law was clearly established as of the dates of the events."  *Id.*

[19] The question does appear to have come up with some frequency in the Eighth Circuit.  There, courts have regularly found that requiring arrestees to remove clothing so that their tattoos can be photographed is not a constitutional violation.  *See, e.g.*, *Schmidt v. City of Bella Villa*, 557 F.3d 564, 573–74 (8th Cir. 2009) (no constitutional violation found when an arrestee was required to partially unbutton her jeans and photograph her own normally-concealed tattoo in private, for identification purposes); *Johnson v. Florell*, No. CIV 05-159 RHK/AJB, 2006 WL 3392784, at *5 (D. Minn. Oct. 19, 2006) ("[T]he court finds no inherent constitutional offense in lifting a tee shirt or holding up shirt sleeves to photograph tattoos" following a suspect's arrest.), *report and recommendation adopted*, 2006 WL 3398051 (D. Minn. Nov. 21, 2006), *aff'd*, 292 F. App'x 523 (8th Cir. 2008).  By contrast, in *Pace v. City of Des Moines*, an officer entered a suspect's business, flashed

has therefore failed to carry his burden to show that the photography was in violation of a clearly established right.

Finally, with regards to the City of Pueblo, Plaintiff has failed to allege that the photographing of his tattoos was pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City's] officers." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).  Although Plaintiff includes in his Amended Complaint a purported section of the Pueblo Police Department Policy Manual titled "Identification of Criminal Street Gangs/Participants," nothing in this policy excerpt directs that individuals be photographed by officers for the purpose of including them in the Gang List.  [*See* #72 at 47–50]  Plaintiff has therefore failed to allege facts that could support a claim for municipal liability for the photographing in his hospital room.

### b.   Search of Plaintiff's Jeans

With respect to the search of Plaintiff's jeans, the City Defendants argue that this search was permissible pursuant to the plain view exception to the warrant requirement. [#78]  "The 'plain view' doctrine allows a law enforcement officer to seize evidence of a crime, without violating the Fourth Amendment, if '(1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character

---

his firearm, told the suspect to step outside, and pushed him against a wall.  201 F.3d 1050, 1052–53 (8th Cir. 2000).  The officer then ordered the suspect to remove his shirt so that he could photograph the tattoo on the suspect's chest, and the suspect complied. *Id.* at 1053.  The officer argued that the suspect could not reasonably expect that the surface of his upper body, and in particular his tattoo, could be kept private, because the suspect was occasionally seen in public wearing tank top shirts. *Id.*  The Eighth Circuit disagreed, holding that the officer's actions were too intrusive to be considered merely part of an investigative stop, and that a reasonable officer cognizant of clearly established law would realize that such an imposition requires a warrant. *Id.* at 1054.

was immediately apparent (i.e., there was probable cause to believe it was contraband or evidence of a crime), and (3) the officer had a lawful right of access to the object.'" *United States v. Angelos*, 433 F.3d 738, 747 (10th Cir. 2006) (quoting *United States v. Thomas*, 372 F.3d 1173, 1178 (10th Cir. 2004)).   But the City Defendants have failed to identify what evidence associated with criminal activity *inside* Plaintiff's pockets would have been plainly apparent to Defendant Thomas.[20]

Once again, however, because the City Defendants have raised the defense of qualified immunity [#78 at 19–21], the Court must turn to the clearly established prong of the analysis.   Based upon the allegations in the Complaint—including the fact that Defendant Thomas removed money from Plaintiff's pockets and collected his jeans, shorts, and shoes [#72 at 7]—it appears that Defendant Jones was conducting an inventory search incident to the seizure of relevant evidence, a recognized exception to the warrant requirement.   *See United States v. Kendall*, 14 F.4th 1116, 1124 (10th Cir. 2021) ("'[I]nventory searches are . . . a well-defined exception to the warrant requirement of the Fourth Amendment.'" (quoting *Colorado v. Bertine*, 479 U.S. 367, 371, (1987)).   An inventory search is permissible under the Fourth Amendment when police seize property (most commonly an automobile), and then follow a routine practice of securing and identifying the secured item's contents.   *S. Dakota v. Opperman*, 428 U.S. 364, 369 (1976).   Inventory searches serve "three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or

---

[20] As opposed to the pants themselves, discussed in more detail below.

disputes over lost or stolen property; and the protection of the police from potential danger." *Id.* (citations omitted).

Plaintiff has failed to cite any case that would have put Defendants on notice that collecting the items inside Plaintiff's pants pockets was a constitutional violation under the circumstances here—where, for the reasons articulated in Section (III)(D)(1) below, Defendant Thomas's seizure of the jeans was lawful.  Nor has the Court's own research yielded any such case.  Indeed, the Court has found at least one out-of-circuit case that upheld the lawfulness of a similar inventory search. *Chavis v. Wainwright*, 488 F.2d 1077, 1078 (5th Cir. 1973) (upholding inventory search of stabbing victim's clothing that revealed heroin when the clothing was seized as evidence in the stabbing).  Accordingly, Defendants are entitled to qualified immunity with respect to the claims brought against them in their individual capacities related to Defendant Thomas' search of Plaintiff's pants pockets at the hospital.[21]

With regards to the City of Pueblo, Plaintiff has failed to allege that the search of his pants pocket was pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City's] officers." *Monell*, 436 U.S. at 690.  The Complaint contains only a conclusory statement that the search was undertaken

---

[21] Further complicating this issue is the lack of clarity within the Complaint as to when Plaintiff was actually arrested.  "A warrantless search preceding an arrest is a legitimate search incident to arrest as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search." *United States v. McKissick*, 204 F.3d 1282, 1296 (10th Cir. 2000) (quotation omitted).  Here, it is entirely unclear from the Complaint when Plaintiff was arrested, and therefore unclear whether the search was pursuant to a lawful arrest.  For this additional reason, the Court cannot conclude that it was clearly established that Defendant Thomas' search of Plaintiff's pants pockets violated Plaintiff's constitutional rights.

"pursuant to the formal or informal custom, policy and practice of the City of Pueblo, which encourages, condones, tolerates, and ratifies the false arrest and unlawful seizure of its law enforcement officers."   [#72 at 25-26] These conclusory statements and "formulaic recitation[s]" of the elements of a municipal liability claim are insufficient to state a claim for relief.  *See Twombly*, 550 U.S. at 555; *see also Garcia v. Adams Cnty.*, No. 16-cv-01977-PAB-NYW, 2017 WL 4251931, at *3-4 (D. Colo. Sept. 25, 2017) (dismissing complaint where plaintiff failed to identify specific policies or failures to train and supervise); *Baumann v. O'Neil*, No. 14-cv-02751-CMA-NYW, 2015 WL 5121800, at *5 (D. Colo. Aug. 10, 2015) (finding "Plaintiff['s] attempts to pursue his municipal liability claim based on nothing more than naked assertions that some unidentified aspects of the City's training, supervision, and/or discipline regimes were deficient and a moving force behind the alleged wrongful arrest," were insufficient to state a municipal liability claim); *White v. City & Cnty. of Denver*, 13-cv-01761-CMA-MJW, 2014 WL 3953135, at *7 (D. Colo. Aug. 12, 2014) ("Plaintiff has not alleged specifics regarding why [defendants'] supervision was inadequate or explained how the incident described in the Second Amended Complaint could have been avoided by better supervision or training."); *Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *4 (D. Colo. May 18, 2011) (dismissing municipal liability claims where the failure to train or supervise allegations were "conclusory in nature and devoid of any supporting factual allegations that would demonstrate that the City or County were deliberate[ly] indifferent to the need for more or better training and supervision").

### 2.      Searches at the Police Station

At the Pueblo Police Station Defendants Jesik and Officer Doe 1 swabbed Plaintiff's hands for gunpowder residue, documented his fingerprints, and required Plaintiff to remove his shirt so they could photograph his tattoos.  [#72 at 13, 26]  These searches were conducted without a warrant, and Plaintiff argues that they were without probable cause or reasonable suspicion, and therefore unconstitutional.  [*Id.* at 27]  City Defendants argue that these were booking procedures and lawful searches incident to arrest.  [*Id.* at 10]  The Court agrees with the City Defendants.

As noted previously, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *Gant*, 556 U.S. at 338 (quoting *Katz*, 389 U.S. at 357).  "Among the exceptions to the warrant requirement is a search incident to a lawful arrest."  *Id.*  "[T]he Fourth Amendment allows police to take certain routine 'administrative steps incident to arrest—*i.e.*, . . . book[ing], photograph[ing], and fingerprint[ing].'"  *Maryland v. King*, 569 U.S. 435, 461 (2013) (quoting *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 58 (1991)).

The Complaint makes clear—and the City Defendants do not appear to contest— that Plaintiff was under arrest during at least some of the time he was in the police station.  [*See* ##72 at 14; 78 at 10]  And, as explained above, the Court finds Plaintiff has failed to successfully plead that his arrest was not supported by probable cause.  Plaintiff has pled facts making clear that the search at the Pueblo Police Department was consistent with the types of searches incident to lawful arrest permitted under the Fourth Amendment— precisely the kinds of booking, photographing, and fingerprinting procedures the Supreme

Court noted as allowable.  *King*, 569 U.S. at 461.  Therefore, Plaintiff has failed to plead facts that would suggest that the searches at the Pueblo Police Station were unconstitutional.

### 3.    Conclusion

The Court finds that Plaintiff has failed to make well-pleaded factual allegations, viewed in the light most favorable to him, sufficient to state a facially plausible claim that his right to be free of an unreasonable search was violated.  The City Defendants' Motion is therefore GRANTED to the extent that it seeks dismissal of Claim Two.  Claim Two is DISMISSED WITHOUT PREJUDICE, and Plaintiff is GRANTED LEAVE to file an Amended Complaint as stated in Section (IV), below.

### D.    Unlawful Seizure of Property

Claim Three seeks relief under Section 1983 for alleged violations of Plaintiff's right under the Fourth Amendment to be secure in his effects against unreasonable seizures. [#72 at 27–43]  Plaintiff alleges that he was subject to two unconstitutional seizures of his effects: first when his clothing was seized from his hospital room on July 18, 2020, and second when the Vehicle and its contents were seized on November 30, 2020.  [*Id.* at 27] Plaintiff brings this Claim against Defendants Taylor, Brown, Bustos, Cordova, Wojcik, Timme, Mountain State Lenders, LLC, and Cordova Towing LLC.  [*Id.* at 27]  The City Defendants argue that Plaintiff's clothing at the hospital was properly seized as evidence [#78 at 10–11], and that the initial seizure of the Vehicle was proper because Defendant Brown justifiably relied on the BOLO that had been issued on the Vehicle [*id.* at 11–13]. The Private Defendants argue both that they are not state actors subject so suit under Section 1983 [#79 at 3–5], and that Plaintiff has failed to allege that the Private

33

Defendants were involved in the seizure of the Vehicle [*id*. at 5–6].  The Court addresses each seizure in turn.

### 1.    Seizure of Plaintiff's Clothes

At the hospital, Defendant Thomas took possession of Plaintiff's shoes, jeans, and shorts, worth a total of approximately $350.  [#72 at 7]  The City Defendants argue that this property was properly seized as evidence of an assault (a third-party's shooting of Plaintiff) [#78 at 10–11], and the Private Defendants argue that they were entirely uninvolved in this seizure [#79 at 5].  The Court agrees that Plaintiff has not stated a plausible claim with respect to the seizure of his clothes.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  For a seizure to be reasonable, it must ordinarily be supported by a warrant based on probable cause. *United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021) (citing *United States v. Ventresca*, 380 U.S. 102, 106–07 (1965), *Coolidge v. New Hampshire*, 403 U.S. 443, 454 (1971)).  "Warrantless seizures of personal property are generally considered unreasonable under the Fourth Amendment unless there is probable cause to believe the property is or contains contraband or evidence of a crime *and* the seizure falls within an established exception to the warrant requirement."  *United States v. Davis*, 657 F. Supp. 2d 630, 637 (D. Md. 2009), *aff'd*, 690 F.3d 226 (4th Cir. 2012)  (citing *United States v. Place*, 462 U.S. 696 (1983).  As explained earlier, one such established exception is "[t]he 'plain view' doctrine[, which] allows a law enforcement officer to seize evidence of a crime, without violating the Fourth Amendment, if '(1) the officer was lawfully in a position from which the object seized was in plain view,

(2) the object's incriminating character was immediately apparent (i.e., there was probable cause to believe it was contraband or evidence of a crime), and (3) the officer had a lawful right of access to the object.'" *Angelos*, 433 F.3d at 747 (quoting *Thomas*, 372 F.3d at 1178).

Multiple circuits have held that the plain view doctrine allows police seizures of clothing in situations similar to Plaintiff's. *See*, *e.g.*, *United States v. Mattox*, 27 F.4th 668, 673–74 (8th Cir. 2022) (officers lawfully seized a bag containing a shooting victim's clothing from an emergency room because patient had no reasonable expectation of privacy in his hospital room and the clothes were in plain view); *United States v. Clancy*, 979 F.3d 1135, 1137–40 (6th Cir. 2020) (police lawfully seized a clear plastic bag of bloody clothing from the hospital under the plain view doctrine, after its wearer, a robbery suspect, had been airlifted out of the hospital); *United States v. Davis*, 690 F.3d 226, 233–39 (4th Cir. 2012) (plain view exception allowed police to lawfully seize the pants and boxer shorts of a shooting victim that had been removed by hospital personnel and placed in a clear plastic bag in the victim's room, as evidence in the crime of the victim's shooting); *Chavis*, 488 F.2d at 1078 (police properly seized the clothing of a stabbing victim from a hospital, as evidence in the crime of the victim's stabbing). Plaintiff has failed to plead facts that would distinguish the present case from those cited above. Defendant Thomas was lawfully at the hospital (*see* Colo. Rev. Stat. § 12-240-139(A) (requiring licensed healthcare providers to report gunshot wounds to the police)), and Plaintiff has not pled that the bag with his clothing was not in plain view [*see* #72 at 7, 25]. Plaintiff was shot in the leg, so his jeans, boxer shorts, and shoes could quite plausibly bear blood stains, bullet holes, or other evidence, which would have been immediately

obvious to Defendant Thomas.  Accordingly, because the officers had a lawful right of access to the clothes as evidence of a violent crime, Plaintiff has failed to allege a violation of the Fourth Amendment as to the seizure of his clothing at the hospital.

### 2.    Seizure of Plaintiff's Vehicle and Property

On November 30, 2020, Defendant Brown stopped Plaintiff for speeding.[22]  [#72 at 29, 52]  Defendants Brown and Bustos subsequently seized the Vehicle and its contents, pursuant to a BOLO ordering that the car be towed to a secure facility so that it could be searched for evidence of a shooting that the vehicle was reported as having been involved in.  [##72 at 31; 41-2 at 5:08–15:20]  Defendant Brown acknowledged that he did not have a warrant to seize the Vehicle.  [#72 at 31–32]  Plaintiff alleges that this seizure violated his Fourth Amendment rights.  [*Id.* at 27–33]

The City Defendants argue that the warrantless seizure of the Vehicle was proper, and that Defendants Brown and Bustos could rely on the reasonable suspicion of their fellow-officers as memorialized in the BOLO.  [#78 at 12–13]  As to Plaintiff's property within the car, the City Defendants argue that Defendants Brown and Bustos gave Plaintiff and his passenger ample opportunity to retrieve it before the vehicle was seized.  [*Id.* at 11]  The Private Defendants argue that they are not state actors subject to suit under Section 1983, and that they were not involved in the initial seizure of Plaintiff's vehicle.  [#79 at 3–6]  The Court agrees that Plaintiff has failed to plausibly allege a claim with respect to the seizure of his vehicle and the property inside.

---

[22] Plaintiff does not allege that this initial traffic stop was illegitimate or pretextual.  [*Id.*]

As noted previously, under the Fourth Amendment, "warrantless searches and seizures are presumptively unreasonable." *United States v. Cruz*, 977 F.3d 998, 1004 (10th Cir. 2020).  One exception to the warrant requirement exists when an automobile or other vehicle is stopped and the police have probable cause to believe it contains evidence of a crime.  *Colorado v. Bannister*, 449 U.S. 1, 3 (1980).  This "'automobile exception' to the warrant requirement permits law enforcement officers who have 'probable cause to believe a car contains contraband [to] search the car without first obtaining a search warrant.'" *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008) (quoting *United States v. Beckstead*, 500 F.3d 1154, 1165 (10th Cir. 2007).  The Supreme Court has also held that, "[f]or constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers v. Maroney*, 399 U.S. 42, 52 (1970).

The probable cause supporting a search or seizure need not be known in full to the officers effecting a seizure.  Under the "fellow-officer rule," "'[w]hen law enforcement officials rely on a bulletin or alert to conduct a stop or make an arrest, the relevant inquiry is whether the officer who issued the alert—rather than the officer who conducted the challenged action—had the requisite level of suspicion.'" *United States v. Wilkinson*, 633 F.3d 938, 941 (10th Cir. 2011) (citing *United States v. Rodriguez–Rodriguez*, 550 F.3d 1223, 1227 (10th Cir.2008)).

Plaintiff makes no allegation that the officer(s) issuing the BOLO lacked probable cause to believe his car contained evidence of a crime.  [*See generally* #72]  While he

alleges that Defendants Brown or Bustos personally may not have subjectively believed that Plaintiff's car was likely to still contain evidence of a crime ("Officer Jeremy Brown States the following on his Body Camera video[:] 'So this vehicle has some importants, [*sic*], I'm sure whatever is in here is no longer in here because it's been five months.'" [#72 at 32]), he does not allege that the police collectively lacked probable cause to believe that his car contained evidence of a crime.  Indeed, Plaintiff acknowledges that the substance of the BOLO—that the vehicle "was involved in a shooting" [*id.* at 31] was correct ("On July 18, 2020 I pulled up to the Safeway on the 1200 block of south prairie street. [] I was driving the 2008 Lexus that my parents bought me.  My uncle pulled up at the same time. . . .  Then gunfire erupted." [#72 at 7]).  Plaintiff has therefore failed to allege that the seizure of his vehicle was made without probable cause.

Finally, Plaintiff acknowledges that Defendants Brown and Bustos invited Plaintiff and his passenger to remove their personal property from the vehicle before it was seized, but that they declined to do so.[23]  [*Id.* at 32]  The Court therefore concludes that Plaintiff consented to the seizure of the personal property that he declined to remove from the vehicle before its seizure.

---

[23] Plaintiff asserts that he declined to remove his personal property from the trunk of his vehicle because he feared that if he opened his trunk the police would search it.  [#72 at 32]  But Defendant Brown had already informed Plaintiff that the vehicle was to be searched pursuant to a warrant once one could be obtained.  [*Id.* at 31–32]  It is therefore unclear whether or how Plaintiff intended to prevent the search of his possessions inside the trunk of a car that he knew was soon to be searched.  *See United States v. Johns*, 469 U.S. 478, 484 (1985) ("A vehicle lawfully in police custody may be searched on the basis of probable cause . . . .").

### 3.      Conclusion

The Court finds that Plaintiff has failed to make well-pleaded factual allegations, viewed in the light most favorable to him, sufficient to state a facially plausible claim that his right to be free of an unreasonable seizure was violated.  The Court therefore declines to analyze whether any such violation would have been clearly established, or attributable to supervisors, a municipality, or Private Defendants.   The Motions are therefore GRANTED to the extent that they seek dismissal of Claim Three.   Claim Three is DISMISSED WITHOUT PREJUDICE, and Plaintiff is GRANTED LEAVE to file an Amended Complaint as stated in Section (IV), below.

### E.      Retaliation in Violation of the First Amendment

Claim Four seeks relief under Section 1983 for alleged retaliation against Plaintiff for his exercise of freedom of speech under the First Amendment.  [#72 at 43–45]  Plaintiff alleges that he was retaliated against for: (1) asserting his Fifth Amendment rights and refusing to talk to the police on July 18, 2020; (2) asking Defendant Brown "do you have a subpoena" and "do you have a warrant" on November 30, 2020; (3) sending certified letters to Defendants Davenport and Gradisar and to the Pueblo City Attorney on December 6, 2020; and (4) for his grandfather's lawsuit.  [*Id.* at 43]  Plaintiff alleges the retaliation occurred on three occasions: first, on July 18, 2020, when Plaintiff was detained [*id.* at 9, 19, 24]; second, on November 30, 2020, when Defendants Bustos and Brown seized Plaintiff's vehicle [*id.* at 29–31, 33]; and third, in December 2020, when Plaintiff's vehicle was declared abandoned and subsequently sold [*id.* at 38, 41–42].  Plaintiff brings this claim against all Defendants.  [*Id.* at 43]

The City Defendants argue that Plaintiff has failed to plausibly plead that Defendants' actions were substantially motivated by Plaintiff's exercise of constitutionally protected conduct.   [#78 at 13–16]   In addition to adopting the City Defendants' arguments, the Private Defendants argue both that they are not state actors restrained by the First Amendment [#79 at 3–5], and that Plaintiff has failed to plead that the Private Defendants were even aware of Plaintiff's constitutionally protected activities [*id.* at 7]. The Court agrees that Plaintiff has failed to plausibly plead a First Amendment retaliation claim.

The First Amendment prohibits officials from retaliating against individuals for exercising their constitutional rights.  *Poole v. Cnty. of Otero*, 271 F.3d 955, 960 (10th Cir. 2001) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." (quotation omitted)), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006).  To state a First Amendment retaliation claim against a government official, a plaintiff must plausibly allege three elements:

> (1) That the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Here, Plaintiff's allegations concerning retaliation are entirely conclusory.  [*See*, *e.g.*, #72 at 31 ("[Defendant Brown] retaliated against me, and the body camera evidence shows his misconduct, his retaliation, and his violation of my god given rights."); *id.* at 38 ("John Cordova use[d] the protocol for an abandoned car so that he could help defendants

40

retaliate against me."); *id.* at 43 ("I was also retaliated against because of my grandfather[']s lawsuit.").  Plaintiff does not provide any specific facts that could support a conclusion that Defendants took action against Plaintiff in retaliation for Plaintiff engaging in constitutionally protected activity.  Instead, Plaintiff appears to rest his retaliation claim upon the premise that Defendants' actions—in detaining Plaintiff, seizing his vehicle, and selling the vehicle—were illegal, and therefore must have been taken as retaliatory measures.  But, for the reasons articulated above, Plaintiff has failed to make a plausible claim that: (1) the police lacked probable cause to detain him on July 18, 2020, (2) the police wrongfully seized the Vehicle, or (3) Defendants wrongfully deprived him of his ownership of the Vehicle when it was declared abandoned and sold.  Because Plaintiff has failed to establish that these actions were not motivated by legitimate grounds and has otherwise failed to plausibly allege facts suggesting that Defendants' actions were taken in retaliation for constitutionally protected conduct, he has failed to plausibly plead a First Amendment retaliation claim.

The Motions are therefore GRANTED to the extent that they seek dismissal of Claim Four.  Claim Four is DISMISSED WITHOUT PREJUDICE, and Plaintiff is GRANTED LEAVE to file an Amended Complaint as stated in Section (IV), below.

### F.    Procedural Due Process

Claim Five seeks relief under Section 1983 for alleged violations of Plaintiff's right under the Fourteenth Amendment not to be deprived of life, liberty, or property without due process of law.  [#72 at 45–52]  Plaintiff alleges that he was placed on a City of Pueblo "Gang Database" (sometimes styled by Plaintiff as a "Gang List") without notice or an opportunity to be heard.  [*Id.* at 7, 9, 25–26]  Plaintiff further alleges that his

41

placement on this Gang List has resulted in loss of his liberty, including the prolonging of a traffic stop on November 1, 2020, and that police seized his vehicle "partially" because of his enrollment in the Gang List.  [*Id.* at 45–52]  Plaintiff brings this claim against Defendants Davenport and Gradisar.  [*Id.* at 45]

City Defendants argue that individuals have no liberty interest in not being classified as gang members, that the November 1, 2020 traffic stop was not unduly prolonged, and that the seizure of the car was pursuant to proper procedure unrelated to the Gang List. [#78 at 16–18]  The Court agrees that Plaintiff has failed to plausibly plead a protected liberty interest.  The Court therefore does not address the City Defendants' other arguments.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (quotations omitted).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 333 (quotation omitted).  The Tenth Circuit has "held that, '[t]o assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process.'" *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) (quoting *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir.2011)).

In *Brown*, the Tenth Circuit explained the "stigma plus" test, applicable to due process claims based upon damage to reputation, which originates from the Supreme Court's decision in *Paul v. Davis*, 424 U.S. 693 (1976):

> The [*Paul*] Court held that stigma or defamatory harm to reputation in itself was insufficient to create a liberty interest. "[W]e do not think that such defamation, standing alone, deprive[s] . . . any 'liberty' protected by the procedural guarantees of the Fourteenth Amendment." *Id.* at 709, 96 S. Ct. 1155. But it said that stigma plus an alteration in legal status would implicate a liberty interest. Examples of such an alteration in status include the state's taking away the right to operate a vehicle or revoking parole. *Id.* at 711, 96 S. Ct. 1155. Since *Paul,* courts have referred to this standard as the "stigma plus" test. *See Gwinn v. Awmiller,* 354 F.3d 1211, 1216 (10th Cir. 2004).

*Brown*, 662 F.3d at 1167. In *Paul*, police had erroneously published the plaintiff's name and photograph on a flyer listing "Active Shoplifters." 424 U.S. at 695. Mr. Davis's photograph appeared on that list. *Id.* Nonetheless, the Supreme Court found that Mr. Davis had failed the stigma plus test. *Id.* at 713. As the Tenth Circuit explained,

> The [Supreme] Court said that the plaintiff was complaining only about damage to his reputation and could not "assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment." *Id.* at 712, 96 S. Ct. 1155. The Court therefore held that the police officers' "defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause." *Id.*

*Brown*, 662 F.3d at 1167.

As *Paul* and *Brown* make clear, to establish a protected liberty interest, Plaintiff must allege something more than mere defamation. Indeed, numerous courts have held that individuals do not have a protectable liberty interest in not being classified as a gang member. *See McIntosh v. Lappin*, No. 11-CV-01150-PAB-CBS, 2012 WL 4442766, at *25 (D. Colo. Aug. 13, 2012*), report and recommendation adopted in part*, No. 11-CV-

01150-PAB-CBS, 2012 WL 4442760 (D. Colo. Sept. 26, 2012) ("By itself, a gang classification does not trigger any due process rights.") (collecting cases).  And Plaintiff has failed to plausibly allege any "plus" factor that would render his claim cognizable under the due process clause.  Although Plaintiff alleges that the November 1 traffic stop was "prolonged because of [his] name being on the gang list" [#72 at 51], he does not plead any facts to support this allegation.  Plaintiff alleges that he "was asked questions, that had nothing to due [sic] with the traffic stop. Like what [he] was doing in Colorado Springs. The Officer also wanted [Plaintiff] to admit, [he] was smoking weed. Then he took [Plaintiff's] girl friend [sic] out of the car and integrated [sic] her."  [*Id.* at 50-51]  But Plaintiff has not pled any facts to support his speculation that he was asked these questions because his name was on the Gang List, as opposed to some other reason.  Similarly, Plaintiff's bare assertion that his vehicle "was taken by Pueblo Police Department partially, because I am place[d] on the gang list" [*id.* at 52] is unsupported by factual allegations and contradicted by other allegations stating that it was seized as part of the BOLO related to the July 18 shooting [*id.* at 31-32].

The Court thus finds that Plaintiff has failed to make well-pleaded factual allegations, viewed in the light most favorable to him, that would state a facially plausible claim that his right not to be deprived of life, liberty, or property without due process of law was infringed.  The Court therefore declines to analyze whether any such violation would have been clearly established, or attributable to Defendants Davenport or Gradisar. Accordingly, the City Defendants' Motion is GRANTED to the extent that it seeks dismissal of Claim Five.  Claim Five is DISMISSED WITHOUT PREJUDICE, and Plaintiff is GRANTED LEAVE to file an Amended Complaint as stated in Section (IV), below.

44

### G.    RICO

Claim Seven seeks recovery under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq.*  [#72 at 53-78]  Plaintiff alleges that the Pueblo Police Department, in collaboration with the city's towing companies, operate an "Abandon Vehicle Scheme" under which vehicles are declared abandoned and then sold for below-market rates to collaborating towing companies.  [*Id.*]  Plaintiff brings this complaint against all Defendants except the City of Pueblo.  Defendants argue that Plaintiff has failed to allege facts that could articulate a valid claim for relief under RICO. [##78 at 22–26, 79 at 9–11]  The Court agrees.

RICO creates a private cause of action for "[a]ny person injured in his business or property by reason of a violation of  section 1962 of this chapter[.]"  18 U.S.C. § 1964(c). As the Supreme Court has explained:

> [Section 1962] renders criminally and civilly liable 'any person' who uses or invests income derived 'from a pattern of racketeering activity' to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); who acquires or maintains an interest in or control of such an enterprise 'through a pattern of racketeering activity,' § 1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity,' § 1962(c); or, finally, who conspires to violate the first three subsections of § 1962, § 1962(d).

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232–33 (1989).  Thus, "[t]he elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity. *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (citing 18 U.S.C. § 1962(a), (b), & (c)).

"RICO specifically defines 'racketeering activity' as any act that violates specified state and federal crimes, including mail fraud, wire fraud, and bank fraud."

45

*BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1102 (10th Cir. 1999) (citing 18 U.S.C. § 1961(1), *Resol. Tr. Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993)).   "The various acts of racketeering activity described in the statute are often referred to as 'predicate acts' because they form the basis for liability under RICO."  *Id.* (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)). Plaintiff alleges that Defendants committed the predicate acts of robbery (as defined by 18 U.S.C. § 1951), wire fraud (18 U.S.C. § 1343), and mail fraud (18 U.S.C. § 1341).  [#72 at 63]  The Court analyzes each alleged predicate act and finds that Plaintiff has not successfully pled any of them.

The predicate act of robbery requires "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force . . . ."  18 U.S.C. § 1951(b)(1).  Plaintiff alleges that this robbery took the form of the seizure, declaration of abandonment, and ultimate sale of the Vehicle. [#72 at 30, 41, 45, 54, 61, 63]  But for the reasons articulated in Sections III(A) and III(D)(2), Plaintiff has failed to plausibly allege that the seizure, declaration of abandonment, and ultimate sale of the Vehicle were unlawful.  Plaintiff has therefore failed to successfully allege the predicate act of robbery.

The wire fraud statute makes it unlawful for any person to "devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, [and] transmit[ ] or cause[ ] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice . . . ." 18 U.S.C. § 1343.  Plaintiff alleges that this wire fraud occurred when

46

Defendants created and transmitted Notices related to impounded vehicles [#72 at 59, 67], and when they retitled vehicles, including his own, after they were declared abandoned [*id.* at 54, 63].  As discussed in Section (III)(A), however, Plaintiff has failed to plead that his Vehicle (or, indeed, that any other vehicle[24]) was retitled other than by compliance with Colorado law.  Neither the retitling of vehicles pursuant to statutorily prescribed processes, nor the creation and transmittal of statutorily mandated notices about that process, can be said to constitute a "scheme or artifice to defraud" or "false or fraudulent pretenses" as would be required to constitute wire fraud.  Plaintiff has therefore failed to successfully allege the predicate act of wire fraud.

The predicate act of mail fraud requires a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses" and, in support thereof, the placement of any matter in the mail for delivery by the Postal Service.  18 U.S.C. § 1341.  Plaintiff alleges that Defendants committed mail fraud when they sent notices to him about his impounded vehicle.  [#72 at 59, 63]  As already described in detail, however, these notices were required by C.R.S. § 42-4-1804(4)(b)–(c), and Plaintiff does not allege that they contained any false or fraudulent information.  Plaintiff has therefore failed to successfully allege the predicate act of mail fraud.

---

[24] Plaintiff quotes extensively from a newspaper article about the Pueblo Police Department seizing vehicles that were being driven without insurance, and then ultimately declaring some of those vehicles abandoned.  [#72 at 72–73; *see also* Ryan Severance, *Uninsured vehicles being towed by police in Pueblo*, The Pueblo Chieftain, Jan. 15, 2017, https://www.chieftain.com/story/news/2017/01/16/uninsured-vehicles-being-towed-by/9234314007/] But nowhere in the article is the allegation that the vehicles were seized or declared to be abandoned improperly, or without adherence to Colorado law on uninsured and abandoned vehicles.

Because Plaintiff has failed to plead facts that, viewed in the light most favorable to him, could state a plausible claim that Defendants committed predicate acts that could constitute racketeering, the Court declines to analyze any of the other RICO elements. And, because the Court finds that Plaintiff has failed to plausibly plead a RICO violation, the Court also declines to analyze whether any such violation would have been attributable to supervisors or Private Defendants. Accordingly, the Motions are GRANTED to the extent that they seek dismissal of Claim Seven. Claim Seven is DISMISSED WITHOUT PREJUDICE, and Plaintiff is GRANTED LEAVE to file an Amended Complaint as stated in Section (IV), below.

### H.    Substantive Due Process

Plaintiff's eighth claim seeks relief against Defendants Davenport and Gradisar under Section 1983 for violation of Plaintiff's right under the Fourteenth Amendment not to be deprived of substantive due process. [#72 at 78] By way of asserting this claim, Plaintiff states, in full, "I hereby incorporate all other paragraphs of this Complaint as if fully set forth herein." [*Id.*] In his Response to the City Defendants' Motion, Plaintiff declined to offer any argument in support of his substantive due process claim. [*See generally* #86]

As noted above, "[t]he district court must construe a pro se plaintiff's complaint liberally . . . . Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations." *Northington*, 973 F.2d at 1520–21 (citations omitted). "A court is not obligated to craft legal theories for the plaintiff or to supply factual allegations to support the plaintiff's claims." *Carrillo*, 405 F. Supp. 3d at 1055 (D.N.M. 2019) (citation omitted). Even under

48

the liberal construction appropriate to a pro se plaintiff's complaint, the Court is unable to identify within the Complaint any well-pleaded factual allegations that could state a claim to relief under the due process clause that is plausible on its face.

The substantive component of the Due Process Clause "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  In evaluating a substantive due process claim, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Tonkovich*, 159 F.3d at 528 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).  "The 'ultimate' standard for determining whether there has been a substantive due process violation is 'whether the challenged government action shocks the conscience of federal judges.'"  *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir.2002)).  "When applying this standard, [the Court] must bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." *Graves v. Thomas*, 450 F.3d 1215, 1220–21 (10th Cir. 2006) (quotation omitted).

Plaintiff has declined in both his Amended Complaint and his Reply to the City Defendants' Motion to state with specificity what Defendants Davenport and Gradisar did or failed to do that was so outrageous as to shock the contemporary conscience, when they did it, or how their actions harmed him.  [*See generally* ##72, 86]  Even in light of the

49

liberal construction appropriate to a pro se litigant's pleadings, the Court cannot conclude Plaintiff has given Defendants Davenport and Gradisar fair notice of the basis of the substantive due process claim against them so that they could respond to the Complaint, or that Plaintiff has apprised the Court of sufficient allegations to allow it to conclude, if the allegations were proved, that Plaintiff would have a legal right to relief.  The Court therefore finds that Plaintiff has failed to comply with the requirements of Rule 8 with regards to Claim Eight.  The City Defendants' Motion is therefore GRANTED to the extent that it seeks dismissal of Claim Eight.   Claim Eight is DISMISSED WITHOUT PREJUDICE, and Plaintiff is GRANTED LEAVE to file an Amended Complaint as stated in Section (IV), below.

### I.     Claims under the Colorado Constitution and ELEIA

Plaintiff's sixth claim seeks relief against all defendants under the Enhance Law Enforcement Integrity Act (ELEIA) for violation of Plaintiff's rights under the Colorado Bill of Rights.  [*Id.* at 52-53]  ELEIA creates a cause of action for individuals whose rights under Article II of the Colorado Constitution have been violated by a peace officer.  C.R.S. § 13-21-131.  ELEIA specifically states that "[q]ualified immunity is not a defense to liability pursuant to this section."  C.R.S. § 13-21-131(b).

Having found that all of Plaintiffs' federal claims should be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  When a district court has dismissed all claims over which it has original jurisdiction, 28 U.S.C. § 1367(c)(3) expressly authorizes the court to decline to exercise supplemental jurisdiction over any remaining state law claims.  "Whether to exercise supplemental jurisdiction under such circumstances lies within the discretion of the court" and "[n]otions

of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Sauer v. McGraw-Hill Cos.*, No. 99 N 1898, 2001 WL 1250099, at *18 (D. Colo. June 12, 2001) (quotations omitted). As a result, a district court will generally decline the exercise of supplemental jurisdiction when all federal claims have been eliminated prior to trial. *See id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)); *see also Aery v. Bd. of Cty. Comm'rs of Tulsa Cty.*, 696 F. App'x 360, 361 (10th Cir. 2017) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (quotation omitted)). The Motions are therefore **GRANTED** to the extent that they seek dismissal of Claim Six. Claim Six is **DISMISSED WITHOUT PREJUDICE**, and Plaintiff is **GRANTED LEAVE** to file a Second Amended Complaint as stated in Section (IV), below.[25]

## IV. CONCLUSION

For the foregoing reasons, the City Defendants' Motion to Dismiss Third Amended Complaint [#78] and the Motion to Dismiss Plaintiff's Third Amended Complaint brought by Defendants Cordova, Cordova Towing LLC, and Mountain States Lenders, LLC [#79] are **GRANTED**. Because it is possible that Plaintiff may be able to plausibly assert some

---

[25] As outlined above, the Court is recommending that Plaintiffs' federal claims be dismissed without prejudice and that Plaintiff be permitted an opportunity to amend the Amended Complaint to attempt to cure the deficiencies identified herein. Nonetheless, the Court does not believe that it is appropriate to address the merits of the state law claims raised by Plaintiff unless and until Plaintiff can plausibly allege a federal claim and thereby properly assert supplemental jurisdiction over the state law claims. *Sauer v. McGraw-Hill Cos.*, No. 99 N 1898, 2001 WL 1250099, at *18 (D. Colo. June 12, 2001) ("Whether to exercise supplemental jurisdiction under such circumstances lies within the discretion of the court" and "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." (quotations omitted)).

claims for relief through better pleading, Plaintiffs claims are **DISMISSED WITHOUT PREJUDICE**.[26]  *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (holding that when the plaintiff is proceeding pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend" (quotation omitted));  *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").  Plaintiff is granted leave to file a second amended complaint on or before **October 27, 2022,** that corrects the deficiencies identified in this Order**.  Failure to file a second amended Complaint by October 27, 2022, will result in dismissal of this case.**  The Court advises Plaintiff that he may qualify for assistance from the Colorado Bar Association Federal Pro Se Clinic, information available at http://www.cobar.org/fpsc or by calling 303.380.8786.

Finally, the Clerk of Court is directed to correct the spelling of Steven Jesiks's name in the case caption to "Stephen Jesik," and G. Bustos to "Glenn Bustos."


DATED:  September 29, 2022                    BY THE COURT:


                                              s/Scott T. Varholak
                                              United Stated Magistrate Judge


---

[26] The Court trusts that Plaintiff will consider the contents of this Order and give some thought to which of his claims he may plausibly plead against which Defendants and abandon any claims for which he cannot plausibly plead relief and/or Defendants against whom he has no cause of action.